ORIGINAL

FILED IN CLERK'S OFFICE

JUN 27 2002

LUTH........, Clerk
By ............ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LaCHERYL JOHNSON

       Plaintiff

v.

ATLANTA INDEPENDENT SCHOOL
SYSTEM, RODNEY G. MOORE,
Individually and in his official capacity as
General Counsel of the Atlanta Public
Schools Board of Education;
SUPERINTENDENT, BEVERLY L.
HALL, ED.D., Individually and in her
official capacity as the Superintendent of
Atlanta Public Schools

       Defendants

CIVIL ACTION FILE NO.:

**1:02 CV 1794**
**-OLE**

## COMPLAINT

**COMES NOW**, Plaintiff LaCHERYL JOHNSON and files this Complaint

against the above-named Defendants showing the Court as follows:

### INTRODUCTION

1.

The Plaintiff in this Complaint is a former employee of the Atlanta Public

School Board. Plaintiff LaCheryl Johnson brings claims of sexual harassment and

retaliation. By way of introduction, Johnson was employed as a Staff Attorney with

the Independent School System. She was under the direct supervision of General Counsel, Rodney Moore. Johnson alleges that almost immediately after she began her employment, she was subjected to a work environment which was charged with sexually lewd comments, jokes and suggestions. It was Johnson's supervisor, Rodney Moore, who created this hostile work environment. After Johnson complained of the sexual harassment, and after she continually protested Moore's sexual comments jokes and suggestions, she was subjected to retaliation. Defendant Moore and Defendant Hall retaliated against Johnson by terminating her employment. The stated reasons for the termination are totally false and amount to nothing more than pretextual reasons masking a retaliatory motive.

Shortly after Johnson was notified of her termination, she sent correspondence to the school board complaining of the sexual harassment and retaliation. The school system thereafter feigned that Johnson's letter was the first complaint they received concerning Moore's conduct. They then proceeded to conduct a supposed "investigation." As Johnson had been notified of the termination and as she had initiated adversarial proceedings, she originally declined to participate in the "investigation." At that point, Defendant Hall supposedly rescinded the termination and ordered Johnson to participate or she would be fired for not participating. Johnson then agreed to sit for an interview. The result of the supposed

2

"investigation" was that Johnson was fired, again for pretextual reasons. Additionally, Moore received little, if any, corrective action as a result of the investigation.

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 1343 for Johnson's causes of action under 42 U.S.C. §1983 and 1988; the Fourteenth Amendment to the United States Constitution; and her State Law claims for intentional infliction of emotional distress and negligent retention and supervision.

3.

Venue is proper in the Northern District of Georgia, Atlanta Division, because the Defendants are located in this District and Division and because the conduct complained of herein took place in this District and Division.

## PARTIES

4.

The Plaintiff is a female citizen of this judicial district entitled to bring actions of this kind and nature.

5.

The Atlanta Independent School System is a non-profit educational state

3

system. It is a political subdivision of the State of Georgia and has the capacity to sue and be sued. The Atlanta Independent School System is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964. All of the actions complained of herein were taken under color of state or local law and were taken pursuant to the policy or custom of the Atlanta Independent School System. The Atlanta Independent School System may be served via Rule 4 of the Federal Rules of Civil Procedure by personal service through Beverly L. Hall, ED.D., Superintendent, Atlanta Public Schools, 210 Pryor Street, S.W., Atlanta, Georgia 30303.

6.

Defendant Rodney G. Moore was at all times relevant to this litigation the General Counsel for the Atlanta Independent School System. Defendant Moore is sued individually and in his official capacity as General Counsel for the Atlanta Independent School System. All of General Counsel Moore's conduct and actions alleged herein were committed under color of state law and were taken pursuant to the policy custom and usage of the Atlanta Independent Schools System. Moore is a final policy making official for the Atlanta Independent School System as it relates to employment decisions within the school system's legal department. Defendant Moore may be served via Rule 4 of the Federal Rules of Civil Procedure at his work address at Office of the General Counsel, 210 Pryor Street, S.W., Atlanta, Georgia

4

30303-3624.

7.

Superintendent Beverly L. Hall, ED.D. was at times relevant to this litigation the Superintendent of the Atlanta Independent School System. Superintendent Hall was Defendant Moore's immediate supervisor. Defendant Hall is sued in her individual capacity and official capacity as Superintendent for the Atlanta Independent School System. In Defendant Hall's capacity as Superintendent, she is the Atlanta Independent School System's final policy making official with regard to hiring and termination decisions within the Law Department. Superintendent Hall's conduct, actions or omissions alleged herein were committed under color of state law and were taken pursuant to the policy, custom and usage of the Atlanta Independent School System. Defendant Hall may be served via Rule 4 of the Federal Rules of Civil Procedure by personal service at her work address of 210 Pryor Street, S.W., Atlanta, Georgia 30303.

## COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

8.

The plaintiff has filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission. The charge is filed within 180 days of the discrimination and retaliatory actions complained of herein. The plaintiff will

5

request a Right to Sue letter from the U.S. Department of Justice and will amend her Complaint to assert claims for violations of Title VII within ninety (90) days of receipt of the Right to Sue notification.

## FACTUAL ALLEGATIONS

9.

LaCheryl Johnson was a former Staff Attorney with the Atlanta Independent School System (hereinafter at all times referred to as "APS"). On November 19, 2001, Ms. Johnson began her employment with APS under the direct supervision of General Counsel, Defendant Rodney Moore.

10.

Almost immediately after she began employment, Johnson was subjected to a work environment which was charged with sexually lewd comments, jokes and suggestions.

11.

Since the beginning of Johnson's employment, she has been continually and viscously sexually harassed and discriminated against by Moore. The sexual harassment she was forced to endure, as summarized below, was severe and pervasive.

6

12.

The sexual harassment was known to many of the Atlanta Public School Board of Education Members and other supervisory level employees and officials and absolutely no remedial action was taken to stop Defendant Moore's behavior toward Johnson and other female employees. In fact, much of the harassment complained of herein occurred in the presence of other APS employees.

13.

The sexual harassment perpetrated by Defendant Moore was witnessed by other APS employees and was so severe and pervasive that Defendant APS knew or should have known of the harassment directed toward Johnson.

14.

The sexual harassment inflicted upon Johnson by Defendant Moore took place within a month of Johnson's hire at APS. On one occasion the staff of APS attended a law related Christmas party and Defendant Moore was drinking heavily. Defendant Moore began whispering sexually offensive and inappropriate comments in Johnson's ear. Defendant Moore attempted to convince Johnson to leave the party and go home with a friend of his. Johnson was appalled and tried to ignore the inappropriate comments of her boss.

7

15.

Notwithstanding this, however; Defendant Moore continued to press the issue with Johnson regarding his desire that Johnson date a colleague of his. Again, Johnson made it clear to Defendant Moore that she did not find it appropriate to date Defendant Moore's friends. Moore continued to make comments to Johnson such as that she needed to bring an overnight bag to work so that she could go to his friend's house and "give him a little bit." Johnson continued to attempt to end the conversation and focus on her work.

16.

Even in the face of Johnson's clear indications that she did not believe Moore's actions to be appropriate, Defendant Moore's conduct nevertheless continued to escalate. When Johnson approached Defendant Moore to ask him a work related question, Defendant Moore would manipulate the conversation to a sexual matter. For example, when Johnson would begin to ask a question "Do you...," Moore would interrupt and state: "Oh, yeh, on the first night absolutely. Sometimes I try to wait for the second night to get some." This would happen even if Johnson was only asking Defendant Moore whether or not he needed a copy of a report. Again, Johnson consistently tried to make her displeasure known and turn the sexual conversations to work related matters.

8

17.

The offensive touching, verbal harassment and overall inequitable treatment was of such a nature as to cause Johnson to suffer severe mental and emotional distress and to affect the terms and conditions of her employment.

18.

On another occasion, Johnson was discussing her plans with the Paralegals in the office to attend a gym. Defendant Moore joined the conversation and stated to Johnson that she did not need to join a gym because she "looked real nice." Defendant Moore then sat in a chair behind Johnson and rolled the chair up behind her in such a manner that if she bent her knees she would have been sitting directly on Defendant Moore's penis. In doing so, Defendant Moore had Johnson closed in between his legs as he slouched down on the chair and spread his legs around her. Then looking directly at Johnson's buttocks he stated "yeh, actually there are some areas you could try to build up." When Johnson turned around, she noticed that Defendant Moore had his head to the side looking directly at her buttocks. Johnson was again appalled by his behavior and stated "O.K., on that note I'm leaving." Johnson then exited.

19.

Other references through the course of the work day included various

9

outrageous statements made by Defendant Moore referencing anything from Johnson's status of being a single woman to references to oral sex.

20.

On one occasion, on or about the last week of January 2002, Johnson entered Defendant Moore's office as another woman was leaving. Defendant Moore stated to Johnson, "did you see her. That was the lady involved in the titty sucking case. Did you see those big tits?" "Mayfield [the Principal in the case accused of kissing the breasts of a teacher] should be shot for sucking those big 'ole jugs." "Even I would not suck those things." "Would you suck those things?"

21.

On another occasion in or around mid-January Defendant Moore stated to Johnson "you've been looking real nice these days." "Your hair has been in all those new styles and your wearing bright new suits." Johnson tried to change the conversation and explained to Moore that she always did her best to look her most professional. Defendant Moore then changed the conversation to imply that the reason for Johnson's attractive appearance was because she was having sex. He then stated; "they [women] must have a man in their life that is doing something good to them at night." Defendant Moore then began firing a litany of questions at Johnson suggesting, once again, that the reason for her professional appearance was that she

10

was engaged in a sexual relationship at night. Again, Johnson refused to allow herself to be drawn into an inappropriate conversation with her boss.

22.

On any number of occasions, when Johnson attempted to walk through a doorway in the office, Defendant Moore would stand in the frame of the doorway and refuse to move. Johnson would then be forced to squeeze by Defendant Moore to pass by to go in the direction she was headed. Defendant Moore would then make noise of a sexual nature in front of her co-workers at APS.

23.

Defendant Moore's sexual harassment of Johnson was unwelcome, undesirable, unsolicited and offensive. At no time during the entire course of Johnson's employment with APS did she acquiesce in or provoke Defendant Moore's conduct. Thus, Johnson began to suffer severe mental distress associated with Defendant Moore's invasive and officious harassment.

24.

Moore' sexually harassing behavior was also directed at other female employees. Defendant Moore stated to at least one female employee at APS "should I fire you for sucking dick." Moreover, at least one male staff attorney has cautioned Defendant Moore in the past concerning his lewd and sexually inappropriate

11

comments in the office place.

25.

On several occasions, Defendant Moore repeatedly questioned the sexual activities of subordinates in the office as to whom they were sleeping with and the frequency of their sexual activities. Moreover, there were several occasions when Defendant Moore made inappropriate sexual comments and statements to peer level employees. On one occasion, Defendant Moore informed another Director, "hey, I heard you like big and long things" and "do you like it black too?" And, on another occasion, Defendant Moore made statements at meetings with female employees such as, "well this has been nice, it's always erotic to be on a table with three beautiful women behind closed doors."

26.

Johnson witnessed and was made aware of Moore's sexually harassing conduct toward other female employees. Moore's sexual harassing conduct toward others contributed to the hostile work environment which Johnson was forced to endure

27.

After it became clear that Johnson refused to engage in any sexual banter with Defendant Moore, Defendant Moore started making comments to Johnson such as "you are too serious." "You don't know how to take a joke." "You don't know how

12

to play the game." "You are all about work." Defendant Moore then stated that he was going to make everyone in the office "hate" Johnson.

### 28.

Defendant Moore intentionally paid Plaintiff Johnson less than other similarly situated and less qualified attorneys within the office because of the simple fact that Johnson refused to engage in banter of a sexual nature and because she found the office environment personally offensive.

### 29.

On February 5, 2002, Johnson wrote Defendant Moore informing him of the pay discrepancy and asking that the pay discrepancy be addressed.

### 30.

Subsequent to sending the letter to Defendant Moore, Johnson spoke with Jean Dodd, an APS Board of Education Member. The meeting between Johnson and Dodd occurred on February 8, 2002. During the course of this meeting, Johnson informed Dodd of the sexually hostile work environment and the fact that Johnson was receiving less than the similarly situated and less qualified employees at APS.

### 31.

Johnson informed Dodd that she was being paid less at APS in retaliation for her refusal to engage in the sexually charged office environment which was created

13

and maintained by Defendant Moore.

32.

Dodd thereafter contacted Moore and indirectly informed Moore of Johnson's complaints. Dodd requested answers from Moore causing Moore to further retaliate against Johnson for speaking out against his sexual and discriminatory practices at APS.

33.

Johnson has also informed a co-worker that she was objected to Moore's creation of a sexually hostile work environment. That co-worker then informed Johnson that she had relayed Johnson's complaint directly to Moore.

34.

Within **days** of being informed of Johnson's complaints, Defendants Moore and Hall abruptly terminated Johnson's employment with APS. She was to work a two weeks notice period with a termination date effective as of February 14, 2002. There was no justifiable basis for Johnson's termination from APS. During the course of her employment with APS, Johnson performed her job as a Staff Attorney in an exemplary manner.

35.

Prior to Johnson's complaints concerning the sexually charged work

14

environment, Johnson was repeatedly praised concerning her work product and her experience in education. In fact, she had received no criticisms concerning her work at any time before her sudden firing. After it became painfully clear that Johnson objected to the work environment, she was abruptly fired for no legitimate reason.

36.

Defendants' termination of Johnson's employment was executed for the **sole** purpose of retaliating against Johnson for her opposition to the unlawful sexual harassment being visited upon her and the other female employees.

37.

On February 21, 2002, Johnson, through counsel she was forced to retain, sent a written complaint to all of the Defendants and the rest of the members of the APS Board. In Johnson's written complaint, she advised all of the Defendants about the creation and maintenance of a sexual hostile work environment at APS and of the retaliation surrounding her abrupt and unjustified termination from employment.

38.

Johnson's written complaint by letter listed just a few examples of the harassment Defendant Moore inflicted on both her and the other female employees during the course of Johnson's employment at APS.

15

39.

On February 25, 2002, the law firm of Kirkley and Payne was ostensibly hired to serve as an independent investigator to "investigate" Johnson's claim against the Defendants concerning the unwelcome and unlawful sexual harassment that Defendant Moore had inflicted on Johnson.

40.

After Johnson refused to participate in the investigation conducted by Kirkley because she had been fired and had initiated adversarial proceedings, Johnson then received a letter dated March 6, 2002 from Defendant Hall retracting her February 14, 2002 termination from APS pending the completion a review of the claims Johnson set forth in the letter she wrote through her counsel on July 21, 2002. Defendant Hall's letter ordered Johnson to participate in the investigation or she would add her lack of participation as a reason for her termination. The letter also informed Johnson that she would now be performing her work at home.

41.

During the course of her investigation into Johnson's complaints against the Defendants, Ms. Kirkley conducted interviews of APS.

42.

Ms. Kirkley's "Report of Investigation for Atlanta Public Schools" is utterly

16

bogus. The investigation itself was merely a panacea for the Defendants escalating problems caused by Moore's unlawful harassment inflicted upon Johnson which resulted in Johnson's abrupt and unjustified termination.

### 43.

The lack of credibility in Kirkley's Report is found on page 13. In response to the allegations that Johnson was vocally concerned that she earned less than similarly situated employees, Kirkley opines that it violates policy and "common sense" for Johnson to have discussed her salary at all with Board Member Dodd. However, Kirkley ignores the fact that the conversation regarding Johnson's salaries between Dodd and Johnson took place in the broader context of Moore's harassment of Johnson.

### 44.

The Kirkley's investigation concluded that the decision to terminate Johnson was prior to her February 8, 2002 meeting with Dodd and, therefore, was not in retaliation for speaking out about Defendant Moore's unlawful behavior. Next, the Report includes Defendant Moore's assertion that Johnson misled him regarding her experience level as a reason for her termination from APS. Another conclusory statement from Kirkley's Report is the fact that Johnson allegedly had a negative impact on the office morale at APS. All of these "findings" are bogus and the Report

ignores substantial evidence.

45.

At no time during her tenure with APS was Johnson ever warned that her work, or her attitude, was unsatisfactory.

46.

At the conclusion of the Report of Investigation, it examines a few instances of Moore's "lewd" comments. The Report's flimsy determination is that although Defendant Moore has in fact made "lewd comments," they were never directed to one person. Incredibly, the Report suggests that all Johnson had to do was to tell Defendant Moore to "stop." Kirkley even goes so far in protecting these Defendants by quoting an APS employee in the conclusion who describes Defendant Moore as "a good person."

47.

Defendants clearly and blatantly failed to adequately investigate Johnson's complaints in direct violation of their duty to do so.

48.

In addition to the bogus "investigation", the Defendants further retaliated against Johnson by forcing her to work at home during the course of the investigation on APS assignments, while lacking the most basic resources necessary to complete

18

any assignments. It is also important to note that Defendant Moore was allowed to continue to work at the law department at least part of the time while his subordinates in the office were being questioned during the "investigation".

49.

By letter dated March 13, 2002, Johnson received a letter from APS Chief of Staff Sharon Pitts which attached a list of supposed work assignments that had been generated from Defendant Moore. These supposed work assignments were to be completed by March 18, 2002. At this point, Johnson was at a breaking point. She had a few days to prepare three big assignments for her supervisor - the individual whom she recently charged with sexual harassment. Johnson did not have access to a computer, legal research, law school publications and she was forced to perform all of her research in longhand.

50.

Accordingly, as if the situation was not impossible enough, Johnson was forced to call Sharon Pitts to explain the untenable position the home assignment had created. Ms. Pitts extended the time for Johnson to complete the large amount of legal work - notwithstanding her lack of resources. However, on March 22, 2002, Johnson received a letter from Ms. Pitts mischaracterizing their March 21, 2002 telephone conversation. Moreover, in further retaliation, Ms. Pitts told Johnson to go

19

find a computer to use at Georgia State University or Fulton County Courthouse in response to Johnson's repeated requests regarding specific **APS** documents she needed to complete the assignments from Defendant Moore. Clearly, the combined efforts of all of the Defendants were to make life miserable for Johnson in retaliation for speaking out about Defendant Moore's unlawful sexual harassment.

51.

Johnson's life was unbearable. She was trapped at home with assignments to perform while lacking the resources necessary to complete them. Johnson was constantly worried about her financial and professional future and was beginning to exhibit physical symptoms which were manifestation of the stress and shame associated with Defendant Moore's harassment.

52.

On April 15, 2002, the "investigation" report was presented to the APS Board who, within a very short time of delivering the report and without much or any consideration of the many and complex issues contained therein – and with full knowledge of Johnson complaints of sexual harassment and the untenable situation her complaints apparently created – decided to finally terminate Johnson's employment.

20

53.

On April 16, 2002, by way of letter to Johnson, Defendant Hall <u>again</u> terminated Johnson's employment with APS. The Defendants' unjustified and unlawful termination of Johnson was in retaliation for her having raised complaints of sexual harassment and discrimination.

54.

Defendants' actions were willful, wanton, and intentionally directed at harming Johnson, thereby entitling her to an award of punitive damages against the individual Defendants.

55.

Defendants' actions were reckless and taken in conscious disregard of the probable consequences of their actions.

56.

Because of the sexual harassment and the retaliatory conduct described above, Johnson has suffered severe emotional distress, humiliation, sadness and anger as well as the loss of salary, employment benefits and, ultimately, her professional livelihood and she seeks recovery for those losses in this case.

21

## COUNT I - SEXUAL HARASSMENT IN VIOLATION

## OF THE EQUAL PROTECTION CLAUSE

### 57.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

### 58.

The actions of the various officials within the Atlanta Public School System as described above constitute sexual harassment in violation of the Equal Protection Clause of the United States Constitution for which 42 U.S.C. §1983 provides remedy.

## COUNT II - INTENTIONAL INFLICTION OF

## EMOTIONAL DISTRESS

### 59.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

### 60.

The Defendant's conduct as described above was willful and intentional sexual harassment and retaliation directed toward Plaintiff Johnson.

### 61.

The Defendant's conduct as described above constitutes extreme and

outrageous conduct which would naturally embarrassment, humiliate, frighten or outrage Johnson.

62.

Through its willful and intentional failure to intercede on Johnson's behalf, despite its actual and constructive knowledge of Moore's misconduct, combined with its retaliatory conduct toward Johnson when she complained, Defendant Hall ratified, condoned and adopted Moore's extreme and outrageous conduct. Defendants Moore's and Hall's misconduct caused Johnson to suffer severe mental suffering, wounded feelings and emotional distress thereby making the Defendants liable to Johnson for intentional infliction of emotional distress.

## COUNT III - NEGLIGENT HIRING/NEGLIGENT RETENTION
## OF DEFENDANT MOORE

63.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

64.

Defendants owed a duty to Johnson, as its employee, to exercise reasonable care and screen the hiring of employees in order to provide a work environment free of sexual harassment.

23

## COUNT I - SEXUAL HARASSMENT IN VIOLATION

## OF THE EQUAL PROTECTION CLAUSE

### 57.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

### 58.

The actions of the various officials within the Atlanta Public School System as described above constitute sexual harassment in violation of the Equal Protection Clause of the United States Constitution for which 42 U.S.C. §1983 provides remedy.

## COUNT II - INTENTIONAL INFLICTION OF

## EMOTIONAL DISTRESS

### 59.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

### 60.

The Defendant's conduct as described above was willful and intentional sexual harassment and retaliation directed toward Plaintiff Johnson.

### 61.

The Defendant's conduct as described above constitutes extreme and

22

outrageous conduct which would naturally embarrassment, humiliate, frighten or outrage Johnson.

### 62.

Through its willful and intentional failure to intercede on Johnson's behalf, despite its actual and constructive knowledge of Moore's misconduct, combined with its retaliatory conduct toward Johnson when she complained, Defendant Hall ratified, condoned and adopted Moore's extreme and outrageous conduct. Defendants Moore's and Hall's misconduct caused Johnson to suffer severe mental suffering, wounded feelings and emotional distress thereby making the Defendants liable to Johnson for intentional infliction of emotional distress.

## COUNT III - NEGLIGENT HIRING/NEGLIGENT RETENTION
## OF DEFENDANT MOORE

### 63.

The plaintiff incorporates the preceding allegations of this Complaint as if alleged fully herein.

### 64.

Defendants owed a duty to Johnson, as its employee, to exercise reasonable care and screen the hiring of employees in order to provide a work environment free of sexual harassment.

65.

Defendants APS and Hall owed a duty to Johnson, as its employee, to exercise reasonable care in maintaining a work environment free of sexual harassment once they knew, or should have known, of Defendant Moore's reputation for sexual harassment of Johnson and her fellow employees.

66.

Defendants APS and Hall knew, or should have known, of the sexually predatory conduct of Moore based upon Plaintiff's complaints as well as the complaints of other female employees.

67.

As a direct and proximate result of Defendants APS's and Hall's failure to screen and monitor the conduct of Defendant Moore they have committed the torts of negligent hiring and negligent retention causing Johnson to suffer damages, for which she is entitled to be compensated in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demand judgment as follows:

A.    Permanent injunctive and equitable relief prohibiting Defendants from further discriminatory/retaliatory conduct in the future;

B.    A declaratory judgment that the Defendants' above described conduct

24

violates the Equal Protection clause of the United States Constitution for

which 42 U.S.C. Section 1983 provides a remedy;

C.    Compensatory damages for mental and emotional distress in an amount

to be determined by the enlightened conscious of the jury;

D.    Punitive damages against the individual Defendants in an amount to be

determined by the enlightened conscious of the jury;

E.    Compensation for all lost pay and benefits occasioned by the

Defendants' unlawful conduct as well as reinstatement, or in the

alternative, front pay;

F.    Prejudgement interest;

G.    Attorneys' fees and the expenses of litigation pursuant to 42 U.S.C.

Section 1988;

H.    Trial by jury; and,

I.    Such other and further relief as this Court deems just and proper.

[signature on following page]

25

Respectfully submitted this 27th day of June 2002.

David C. Ates
Georgia Bar No. 026281
Kimberly Althuis
Georgia Bar No. 500790
Attorney for Plaintiff

PARKS, CHESIN, WALBERT & MILLER, P.C.
75 Fourteenth Street
26th Floor
Atlanta, Georgia  30309
Telephone:  (404) 873-8000
Facsimile:  (404) 873-8050

26